# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 15, 2008

Charles R. Fulbruge III
Clerk

No. 07-20013

JAMES LINDQUIST; SANDRA LINDQUIST,

Plaintiffs-Appellants,

v.

THE CITY OF PASADENA, TEXAS,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, BENAVIDES, and ELROD, Circuit Judges.

JENNIFER W. ELROD, Circuit Judge:

James and Sandra Lindquist appeal the district court's dismissal of their claims arising from the City of Pasadena's refusal to grant them a license to operate a used car dealership. We reverse and remand for proceedings consistent with this opinion.

## I. FACTS AND PROCEEDINGS

Because this is an appeal from a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), these facts are taken from the pleadings and presented in the light most favorable to the Lindquists. In 2003, the Pasadena City Council enacted an ordinance governing the issuance of used car dealer licenses. The ordinance provided, among other things, that "[e]ach new license location is required to be a minimum of one thousand (1,000) feet from any existing

license location as measured from nearest property line to nearest property line" (the "1,000' Rule"). The ordinance also provided that "[t]here shall not be issued a new license for the operation of a used car lot within one hundred fifty (150) feet of the lot lines of a residential area or subdivision," subject to certain exceptions irrelevant to this appeal (the "150' Rule"). Finally, the ordinance provided that an applicant refused a license by the city building inspector had a right to appeal to the city council, and that "[t]he hearing before the council shall be de novo and the applicant shall have the burden of proving that he is entitled to the license."

After the ordinance was enacted, the Lindquists considered purchasing two lots in Pasadena to expand their used car dealership. One was located at 4545 Spencer Highway, and the other was located at 4646 Spencer Highway. When the Lindquists consulted city officials responsible for issuance of the necessary license, the officials told them that neither lot qualified for a license, as 4545 Spencer Highway was within 1000 feet of two preexisting dealerships and within 150 feet of a residential area, and 4646 Spencer Highway was within 1000 feet of one preexisting dealership. The Lindquists were unaware that the city council sometimes issued licenses on appeal for properties that violated the 1000' Rule and the 150' Rule. They purchased the lot located at 4646 Spencer Highway and, in reliance on the city officials' statements, applied for and received a license to sell "Boats, Motorcycles, Travel Trailers, Golf carts, ATV'S, Classic Cars, and Classic Trucks," but not other used cars.

The Lindquists subsequently discovered that their competitors Kieth and Tammy Neilson had purchased the lot located at 4545 Spencer Highway and had applied for a license to operate a used car dealership there. Consistent with their treatment of the Lindquists, city officials informed the Neilsons that the lot was not in compliance with the ordinance and refused to issue the license. The Neilsons appealed to the city council, arguing that they should receive the license despite the ordinance because of the "economic hardship" that would

otherwise result. Despite the ordinance's explicit restrictions, the city council granted the appeal on May 18, 2004. A member of the city council commented on the apparent inequity of the decision: "I do believe that there's a double standard in the City . . . [concerning] the car dealers particularly . . . . All things being fair, we're talking about double standards."

The following day, the Lindquists applied for a license to operate a used car dealership at 4646 Spencer Highway. Their application was denied, and they appealed. At a hearing before the city council on June 15, 2004, city officials testified that the 1000' Rule was the only impediment to the Lindquists' application. After the city council voted to deny the Lindquists' appeal, one dissenting member described the decision as "favoritism" and another agreed, stating: "[D]enial on one and acceptance on another in essentially the same exact circumstances from the standpoint of documentation and wherewithal for this facility does speak of favoritism." In August 2006, the city council granted a used car dealer license for another lot in violation of the 150' Rule after a former city councilman told the council that the lot's owner was a "'respectable businessman' who made substantial donations to support local rodeos" and would suffer "economic hardship" without the license.

The Lindquists sued the city, alleging that the licensing ordinance was facially invalid under the United States and Texas constitutions because it gave the city council "unbridled discretion" to grant or deny used car dealer licenses on appeal. After the city filed a motion to dismiss for failure to state a claim, the Lindquists amended their complaint to include claims that the city's refusal to grant the Lindquists a license after granting licenses to similarly situated used car dealers violated their equal protection rights, and that the city council's arbitrary denial of their request for a license violated their due process rights. The district court dismissed the Lindquists' amended complaint for failure to state a claim, and this appeal followed.

## II. STANDARD OF REVIEW

We review dismissal of a complaint for failure to state a claim de novo. In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007). We "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." Id. (internal quotation marks and citations omitted). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1974 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citation and footnote omitted).

## III. ANALYSIS

A.    Equal Protection

In support of their equal protection claim, the Lindquists allege that the city council refused to grant them a used car dealer license while granting licenses to others similarly situated, and that no rational basis exists for the disparate treatment.[1] The district court dismissed the claim on the ground that it sounded in selective enforcement and was therefore deficient in the absence of any allegation that the city's actions were motivated by "illegitimate animus or ill will."

Our precedent forecloses the district court's analysis. In Mikeska v. City of Galveston, the city condemned several beachfront homes and disconnected their utilities after a tropical storm. 451 F.3d 376, 378-79 (5th Cir. 2006). The owners of two of the homes sued the city, alleging in part that it had violated their equal protection rights by refusing to permit reconnection of their homes'

---

[1] The Lindquists allege violation of their equal protection rights under both the United States and Texas constitutions. Because "the federal analytical approach applies to equal protection challenges under the Texas Constitution," Bell v. Low Income Women of Tex., 95 S.W.3d 253, 266 (Tex. 2002), we do not address separately the Lindquists' claim under the Texas Constitution.

utilities while permitting reconnection of the utilities of similarly situated homes. Id. at 381. The district court granted summary judgment in favor of the city, holding that its actions were rationally related to its "obligation to follow state law to 'protect the public beaches from interference.'" Id. at 379.

We reversed the district court's grant of summary judgment, explaining that the Equal Protection Clause required a rational basis for the city's differential treatment of similarly situated homes and setting forth the elements of the homeowners' claim:

> The appellants' equal protection claim is based on their contention that there are a number of similarly situated homes that were allowed reconnection of their utility services . . . . To bring such an equal protection claim for denial of zoning permits, the appellant must show that the difference in treatment with others similarly situated was irrational.

Id. at 381 (citing Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims . . . where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.")); see also Stotter v. Univ. of Tex. at San Antonio, 508 F.3d 812, 824 n.3 (5th Cir. 2007) ("[T]his court has rejected the argument that all 'class of one' equal protection claims require a showing of vindictive animus."). We held explicitly that the homeowners' equal protection claim did not sound in "selective enforcement" or "personal vindictiveness" and was not subject to the "higher evidentiary burden that would normally be required by either claim." Mikeska, 451 F.3d at 381 n.4.[2]

---

[2] Neither Mikeska nor our holding in the present case disturbs the well-established rule that equal protection claims premised on selective enforcement or prosecution, as well as analogous claims, require a showing of improper motive. See, e.g., Bryan v. City of Madison, 213 F.3d 267, 277 (5th Cir. 2003) ("[T]o successfully bring a selective prosecution or enforcement claim, a plaintiff must prove that the government official's acts were motivated by improper

This precedent compels our holding that the Lindquists' equal protection claim does not sound in selective enforcement and does not require a showing that the city acted with illegitimate animus or ill will. The district court thus erred in dismissing the claim. Nonetheless, to ultimately prevail on the claim, the Lindquists must carry the heavy burden of "negativ[ing] any reasonably conceivable state of facts that could provide a rational basis" for their differential treatment. Whiting v. Univ. of S. Miss., 451 F.3d 339, 349 (5th Cir. 2006) (quoting Bd. of Trustees of the Univ. of Ala. v. Garrett, 531 U.S. 356, 367 (2001)) (internal quotation marks omitted).

B.     Due Process

The district court's dismissal of the Lindquists' substantive due process claims was proper. The Lindquists complain that the city's refusal to issue them a license violated their substantive due process rights because other dealers received licenses for properties that did not meet the requirements of the licensing ordinance.[3] As the district court correctly held, this claim is the Lindquists' equal protection claim recast in substantive due process terms and cannot proceed. See County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) ("[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that

---

considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right."); see also Shipp v. McMahon, 234 F.3d 907, 916 (5th Cir. 2000) (observing that an equal protection claim premised on unequal police protection requires a showing of improper motive), overruled on other grounds by McClendon v. City of Columbia, 305 F.3d 314, 329 (5th Cir. 2002) (en banc).

[3] The Lindquists also allege violation of the Texas Constitution's Due Course of Law Clause. Because the protections afforded by this clause and the Due Process Clause are the same, no separate analysis of the due course of law claim is necessary. See Univ. of Tex. Med. Sch. at Houston v. Than, 901 S.W.2d 926, 929 (Tex. 1995) ("While the Texas Constitution is textually different in that it refers to 'due course' rather than 'due process,' we regard these terms as without meaningful distinction.").

Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (citation omitted); see also Willis v. Town of Marshall, 426 F.3d 251, 266 (4th Cir. 2005) ("Because Willis's substantive due process claim thus 'fully overlaps' her Equal Protection claim, the district court properly rejected the due process claim.") (citation omitted).

The district court's dismissal of the Lindquists' procedural due process claim was also proper. Procedural due process requires notice and an opportunity to be heard. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985). The allegations in the Lindquists' amended complaint establish that they received both—they were aware of and participated in the appeal process contemplated by the ordinance after city officials denied their license application. In any event, the Lindquists have waived the issue by failing to brief it. See Melton v. Teachers Ins. & Annuity Ass'n of Am., 114 F.3d 557, 561 (5th Cir. 1997).

C.    Unbridled Discretion

Finally, the district court did not err in dismissing the Lindquists' "unbridled discretion" claim. Though framed as a distinct claim, their allegation that "[t]he existence of unbridled discretion for the City to approve[] or deny licenses," violated their due process and equal protection rights overlaps with the claims analyzed above. To the extent the Lindquists argue that the licensing ordinance is facially invalid because it does not provide adequate standards to guide the city's discretion, they are incorrect for the reasons stated in the district court's opinion: (1) unlike the ordinances at issue in Spann v. City of Dallas, 235 S.W. 513 (Tex. 1921), and other authorities the Lindquists cite, the ordinance at issue here sets forth detailed requirements that city officials are to apply in deciding whether an applicant is entitled to a license; and (2) the ordinance requires an applicant to prove on appeal to the city council that he satisfies the ordinance's requirements to obtain a license. The district court's holding that the ordinance is not facially invalid was thus correct.

## IV. CONCLUSION

For the foregoing reasons, we REVERSE the district court's judgment and REMAND for proceedings consistent with this opinion.