# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 16, 2012

No. 11-30704

Lyle W. Cayce
Clerk

LEIZA S. MCKENNA,

Plaintiff–Appellant

v.

LIBERTY MUTUAL GROUP, INCORPORATED; PAUL MARKS;
JONATHAN BAUGHMAN; SUMMIT CONSULTING, INCORPORATED, A
Florida Corporation,

Defendants–Appellees

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:10-CV-204

Before JONES, Chief Judge, PRADO and SOUTHWICK, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:[*]

Leiza McKenna took leave under the Family and Medical Leave Act ("FMLA") to give birth to her first child. She alleges that upon her return to work, her employer terminated her in retaliation for taking leave. McKenna appeals the district court's grant of summary judgment to the defendants. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-30704

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Leiza McKenna started working for Summit Consulting Group, Inc. ("Summit") as a Loss Control Consultant in April 2007.  Summit is owned by Liberty Mutual and provides workers' compensation insurance support. McKenna's job required her to advise Summit's clients about potential safety and health risks.  She worked in Summit's southwest region, comprised of Louisiana, Mississippi, Arkansas, and Alabama.  McKenna worked from home and frequently traveled to client sites.  In advising clients on potential risks, she prepared data surveys, loss control letters, job site surveys, and other reports.

Summit set goals for its employees to meet and to be evaluated against annually.  The evaluations were completed by the employee's supervisor.  The annual evaluations were based on a score of 75–125, with three categories: 75–90 (minimally effective); 90–110 (effective); and 110–125 (exceeds expectations). Bradley Cadiere supervised McKenna when she started at Summit and completed her 2007 evaluation. In that evaluation, McKenna received an annual evaluation score of 100—the second lowest score of the five employees evaluated by Cadiere.  During that first year, Cadiere had provided positive feedback to McKenna.  He wrote in an email to her in May 2007, "[g]reat evaluation of risk"; in January 2008, he asked her to invite an agent to a meeting, a task usually left to the supervisor; and in evaluating McKenna's report lag times for the first quarter of 2008, Cadiere wrote in an email, "[w]hen we consider this additional [underwriter] lag, your overall average would be even much lower. Allowing me to conclude that your efforts were outstanding."[1]

---

[1] McKenna emphasizes these positive comments, but in the same email in which Cadiere complimented McKenna's evaluation of risk, he also questioned her reporting of who she met with at the client site.  Also, the remainder of Cadiere's email providing first quarter 2008 feedback to McKenna noted that she missed her goals in the New Account activities, Revisited Account activities, and the Accounts > $25K and < $50K Goal category.  The first quarter review email ended with "Great Effort !!!" but the email was not entirely positive.

No. 11-30704

Cadiere resigned from his position in August 2008 and Summit did not replace him until October 2008, when it promoted Jonathan Baughman. Therefore, between August and October 2008, McKenna was supervised by Paul Marks, who had been Cadiere's manager, and who beginning in October 2008 supervised Baughman. In addition to McKenna, there were three women and two men under Baughman's supervision. During all relevant times, Hank Chiles was the Southwest Region Vice President, Steve Smithson was the Vice President of Loss Control—the division in which McKenna worked—and Darryl Ford was Vice President of Human Resources.

From December 1, 2008 to February 1, 2009, McKenna took FMLA leave, during which she had her first child. In March 2009, McKenna received her 2008 evaluation, which gave her an annual evaluation score of 95. Her 2008 score was the lowest of six scores in her unit. McKenna's decreased score was partly attributable to Summit's decision to stop accounting for underwriter lag time in 2008. The 2008 evaluation included a notation that McKenna "did an overall good job [servicing accounts,] with the only missed visit being while out on [short-term disability]." This "servicing accounts" objective was marked on the evaluation as "Met."

In Feburary 2009, Ford directed managers to work with employees that had annual evaluation scores below 97. Marks and Baughman discussed three employees, including McKenna, in response to Ford's email. On April 10, 2009, Baughman emailed McKenna identifying areas of her work that needed improvement. At McKenna's request, Chiles accompanied her to a meeting with Marks and Baughman. At the meeting, Chiles reminded Marks and Baughman that they could only require that McKenna meet her annual objectives, and at the same time cautioned McKenna that "barely meeting what is the acceptable range" would likely result in a low annual evaluation score. Marks and

No. 11-30704

Baughman did not meet with the two other employees they had discussed as a result of Ford's email.

In the summer of 2009, Summit determined that due to economic conditions it had to reduce its workforce. As Ford reviewed the loss control department, he met with Smithson and Marks. They chose to terminate the two employees with the lowest annual evaluation scores in Louisiana—McKenna and an employee who had not taken FMLA leave. McKenna was informed of Summit's decision to terminate her in October 2009, and her last day of employment was December 18, 2009.

McKenna points to a number of incidents prior to her termination that she perceived as undue scrutiny: Summit would not reimburse her for overnight stays in Baton Rouge; Baughman questioned her about an expense for postage; and McKenna lost her company vehicle because she failed to meet her mileage quota. McKenna alleges that no other employee was subject to scrutiny over expenses as small as postage, and that an employee from Mandeville—about the same distance from Baton Rouge as New Orleans is—was permitted to stay overnight in Baton Rouge. Finally, she claims that Marks borrowed another employee's vehicle to drive to a meeting so that the employee would meet her mileage quota and get to keep her vehicle.

McKenna sought and received a right-to-sue letter from the EEOC for sex discrimination and retaliation. She sued the defendants in February 2010 in Louisiana state court, alleging pregnancy harassment and termination in retaliation for taking maternity leave under Louisiana state law. In March 2010, the defendants invoked diversity jurisdiction and removed to federal court. McKenna amended her complaint in May 2010, adding federal race and sex discrimination claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), retaliatory discharge claims under Title VII and the FMLA, and a claim for intentional infliction of emotional distress under Louisiana law. The district

court granted the defendants' motion for summary judgment in June 2011 and dismissed all of McKenna's claims. McKenna appeals her FMLA retaliatory discharge claim.[2]

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, applying the same standards as the district court. *Lindquist v. City of Pasadena Tex.*, 669 F.3d 225, 232 (5th Cir. 2012). Summary judgment is appropriate when, considering all the evidence in the light most favorable to the non-moving party and without making credibility determinations, the record discloses that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Id.* at 233.

## III. DISCUSSION

Where, as here, there is no direct evidence of retaliatory intent, the familiar *McDonnell-Douglas* burden-shifting framework applies to FMLA retaliatory discharge claims. *See Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005). Under that framework, McKenna must first establish a prima facie case of retaliatory discharge by showing that: "(1) she engaged in a protected activity, (2) the employer discharged her, and (3) there is a causal link between the protected activity and the discharge." *Id.* If McKenna can establish her prima facie case, the burden shifts to Summit to articulate a legitimate, nonretaliatory reason for terminating her. *Id.* If Summit articulates such a reason, the burden shifts back to McKenna to show "by a preponderance of the evidence that the employer's articulated reason is a pretext for

---

[2] McKenna waived her pregnancy harassment and retaliation claims and her sex discrimination and retaliation claims by failing to raise them in her opening brief. *See United States v. Pompa*, 434 F.3d 800, 806 n.4 (5th Cir. 2005); Fed. R. App. P. 28(a)(5). She likewise waived her race discrimination claims and her claim for intentional infliction of emotional distress because she failed to adequately brief and argue them on appeal. *See Swindle v. Livingston Parish Sch. Bd.*, 655 F.3d 386, 392 & n.6 (5th Cir. 2011); Fed. R. App. P. 28(a)(9)(A)..

discrimination." *Id.* at 332–33. The district court granted Summit's motion for summary judgment under this standard *McDonnell-Douglas* burden-shifting framework, concluding that McKenna had "at best, arguably established a prima facie case,"[3] but that she had failed to offer sufficient evidence upon which a jury could infer that Summit's reason for firing her—its reduction in force in conjunction with her low annual evaluation score—was a pretext for unlawful retaliation.

The district court did not address, however, McKenna's principal legal theory: that while retaliation was not Summit's sole reason for terminating her, it was a motivating factor. We have recognized that such "mixed-motive" claims are cognizable under the FMLA. *Id.* at 333. The mixed-motive framework modifies the third step in the standard *McDonnell-Douglas* framework by allowing an employee to avoid summary judgment by "offer[ing] sufficient evidence to create a genuine issue of fact . . . that the employer's [nonretaliatory] reason, although true, is but one of the reasons for its conduct, another of which was [retaliation.]" *Id.* If the employee's evidence sufficiently shows that retaliation was a motivating factor in its termination decision, "the burden again shifts to the employer, this time to prove that it would have taken the same action despite the [retaliatory] animus." *Id.*

McKenna argues that she faced increased scrutiny upon returning from FMLA leave, and that increased scrutiny is evidence of the retaliatory animus which, in part, motivated Summit's decision to terminate her. McKenna relies on two cases to support her claim—*Powers v. Woodlands Religious Community Inc.*, 323 F. App'x 300 (5th Cir. 2009) (per curiam), and *Villalon v. Del Mar College District*, No. C-09-252, 2010 WL 3221789 (S.D. Tex. Aug. 13, 2010)). In

---

[3] We express no view on whether McKenna has met her prima facie burden, and instead choose to assume that she has in order to reach the merits of her mixed-motive claim. *See Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 350 (5th Cir. 2008).

No. 11-30704

*Powers*, this court found sufficient evidence of pretext to preclude summary judgment where the plaintiff was terminated one month after she returned from FMLA leave and where the employer failed to use its progressive disciplinary system with respect to the plaintiff, as it had for other employees. *Powers*, 323 F. App'x at 302–03. *Powers* is distinguishable for three reasons. First, although the court recited the mixed-motive standard, it analyzed the facts as if it were a pretext case, not a mixed-motive case. *Id.* at 302. Second, Summit did not decide to terminate McKenna until eight months after she returned from FMLA leave, far longer than the one-month temporal proximity between the *Powers* plaintiff's FMLA leave and termination. *Cf. Evans v. City of Hous.*, 246 F.3d 344, 354 (5th Cir. 2001) (noting that "close timing," or "a time lapse of up to four months," between the protected activity and the adverse action is sufficient to satisfy the causal connection element of a plaintiff's prima facie case). Third, the employer in *Powers* departed from its normal disciplinary procedures when it terminated the plaintiff there, whereas Summit terminated McKenna as part of a firm-wide reduction in force. *Powers*, therefore, is of little value to McKenna.

*Villalon* is also distinguishable. In *Villalon*, the district court determined that a triable issue of fact existed with respect to the plaintiff's mixed-motive claim where she was terminated within four months of her return from FMLA leave and just before she was scheduled to take additional permissible FMLA leave, the employer provided the employee with significantly lower evaluations than it had years earlier, and when told of the scheduled FMLA leave the plaintiff's supervisor was "visibly annoyed" and "rude," stating "who is going to cover for you in the office," "what am I going to do while you are gone," and "you have already been out a couple of weeks." *Villalon*, 2010 WL 3221789, at *5–7 (internal quotation marks omitted). By contrast, McKenna's 2008 annual evaluation score—though lower—was not a great deal different from her 2007

annual evaluation score, and McKenna offered no evidence of her supervisors' negative reaction to her taking FMLA leave.

McKenna has failed to show that she was fired for any reason other than that she had the lowest 2008 annual evaluation score in her unit. McKenna points to several incidents as evidence that she was treated differently after she returned from FLMA than other employees who did not take FMLA leave—Baughman's email suggesting ways for her to improve, her meeting with Baughman, Marks, and Chiles to discuss the email, the inquiry into her postage expenses, the decision to deny her hotel reimbursement in Baton Rouge, and the decision to take away her company car. But for none of those incidents does Mckenna provide a sufficiently similar comparator employee. *See Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009). She has simply not offered any evidence linking her FMLA leave to her eventual termination, and has thus failed to show the retaliatory animus necessary to avoid summary judgment. *See Richardson*, 434 F.3d at 333.

## IV.  CONCLUSION

For the foregoing reasons, the district court's order granting Summit's motion for summary judgment is affirmed.

AFFIRMED.