IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 12, 2009

Charles R. Fulbruge III
Clerk

No. 08-50407
Summary Calendar

RAYMOND LESLIE SANDERS

                                            Plaintiff - Appellant

v.

MURRAY AGNEW, Individually and in his
official capacity; JEFF LANGLEY, Individually
and in his official capacity; SHANNON ROUSEY,
Individually and in his official capacity; MIKE
BELL, Individually and in his official capacity;
UNNAMED OFFICERS, Individually and in their
official capacities; OFFICE OF THE DISTRICT
ATTORNEY, LIMESTONE COUNTY, TEXAS;
ROY DEFRIEND, Individually and in his official
capacity; DENNIS WILSON, Individually and in
his official capacity; LIMESTONE COUNTY, TEXAS

                                            Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:06-cv-185

Before SMITH, STEWART, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

Plaintiff-Appellant Raymond Leslie Sanders ("Sanders") appeals from the district court's dismissal of his claims against Dennis Wilson and Limestone County; grant of summary judgment on his claims against Murray Agnew and Jeff Langley; denial of a motion for a scheduling order, motion for leave to amend complaint, motion for an oral hearing, motion for continuance; and quashing a subpoena for a Justice of the Peace. For the following reasons, we AFFIRM.

## I.  Factual and Procedural Background

This case arose from the Limestone County authorities' ("officers") investigation of a reported vehicle theft. David Elmore filed a theft complaint on his truck on December 11, 2004 by phone in Dallas, Texas. A confidential informant told an officer that Sanders was hiding Elmore's stolen truck in his barn, and the officer verified that Elmore had reported a stolen vehicle. A separate confidential informant told an officer that he had actually seen Elmore's stolen truck in Sanders's barn. The officer also learned that Elmore had made a claim with an insurance company for the stolen vehicle.

The officers first attempted to speak with Sanders about the information they received by going to Sanders's business on December 23, 2004. Sanders and his wife were uncooperative with the officers at the business location, so the officers obtained a search warrant. The officers submitted an affidavit/application for a search warrant to Justice of the Peace Marcus Hannah. During the process, an officer received a phone call from another officer advising that he had just spoken to a man claiming to be Elmore, the owner of the allegedly stolen truck, who said there had been a mistake and a family friend actually had the truck.

The officer considered the story suspicious, as the call was only made after officers were posted at Sanders's property. The officer reported this information

to the Justice of the Peace, but the Justice of the Peace nonetheless issued the search warrant.

Officers searched Sanders's property and found a truck matching the description of Elmore's truck that was reported stolen padlocked in a barn. The front and back license plates had been removed from the truck, the Nader sticker had been removed, the VIN was covered, the truck was devoid of personal effects, and the toolbox was missing with only an outline of a toolbox remaining on the bed of the truck. Sanders was arrested, charged with theft, and jailed. In January 19, 2005, Sanders's case was presented to a grand jury, which did not return an indictment. Plaintiff was still held on bond, and on January 20, 2005, there was an examining trial on the theft charge. The trial was continued until February 17, 2005, where the district attorney conceded that there was no probable cause. The court released Sanders from bond.      The linchpin of this "prank" involved Elmore's cousin, Wesley Elmore ("Wesley"), and Wesley's friend, Shannon Simmons. This duo drove Elmore's truck to Sanders's property without a note or other means of notifying Sanders that the truck was there. Elmore reported the truck stolen to the Dallas Police Department. Wesley did not report the "prank" to Elmore until the following week. When Elmore learned about the "prank," he started calling the Dallas Police Department to "un-report" the truck as stolen. At some point, Elmore also went to Sanders's home while Sanders was not there and removed the toolbox from the truck. On December 23, 2004, Elmore called the Limestone County Sheriff's Office before the search warrant was executed and informed an officer that the truck was not stolen.[1]

---

[1] The "prank" may be more appropriately characterized as a scheme. There were numerous questionable issues surrounding the prank, including numerous alleged misrepresentations by Elmore to his insurance company; Wesley's ability to drive Elmore's truck through a locked security gate on Sanders's property; Elmore's ability to remove the toolbox from Sanders's barn although it was padlocked; the fact that the truck was dropped off at Sanders's house instead of his auto repair shop, which was unusual considering that Sanders previously had not worked on Elmore's vehicles at his home; Elmore's awareness that

Sanders filed a complaint on July 5, 2006, bringing claims under 42 U.S.C. § 1983 related to the search and seizure of his property and arrest. Defendants filed a joint motion to dismiss, seeking dismissal based on failure to state a claim; prosecutorial immunity, qualified immunity, and/or quasi-judicial immunity; break of causation; issue preclusion; and/or collateral estoppel. The magistrate judge issued a Report and Recommendation ("R & R"), recommending that Defendants' joint motion to dismiss be granted, to which Sanders objected.

The district court conducted a de novo review and dismissed Sanders's claims against Roy Defriend, the district attorney, as barred by prosecutorial immunity. As to officers Jeff Langley and Murray Agnew, who obtained the search warrant, the district court found that fact issues needed to be determined before dismissing claims against them based on qualified immunity. Specifically, an issue existed at the motion to dismiss stage as to whether the officers made a misrepresentation in their affidavit for the arrest warrant by stating that Sanders stole Elmore's truck when they should have known that it was not stolen. As to Dennis Wilson, the district court granted the motion to dismiss finding that he was entitled to qualified immunity. The court also found that Sanders had failed to allege any policies of Limestone County that were the moving force behind any of the alleged constitutional violations, and the court granted the motion to dismiss as to Limestone County. Sanders did not file any objections to the magistrate judge's recommendation to dismiss claims against Defendants Rousey and Bell or the conspiracy claim against all the Defendants. The district court nonetheless conducted a de novo review, finding that the

---

it was all a "prank" about the same time that he learned that his insurance had lapsed for non-payment; Sanders fled when officers first attempted to talk to him about the truck; Elmore saw two officers at Sanders's property but did not stop to clarify things; Elmore had reported multiple thefts in the last few years from which he received insurance settlements; and Sanders's business routinely created work orders for serviced vehicles, but no work order was created for the truck. While the state court judge found that there was no probable cause for the arrest, the judge found that there was probable cause as to insurance fraud.

recommendations as to Rousey, Bell, and the conspiracy claim should be adopted.

The magistrate judge also recommended denying Sanders's motion for partial summary judgment based on the recommendation to grant Defendants' motion to dismiss. Because the district court denied the motion to dismiss as to some defendants, the court re-referred Sanders's motion for partial summary judgment so it could be considered with any other motion for summary judgment.

After the magistrate judge's R & R was filed, Sanders filed a motion for leave to amend his complaint. The district court denied the motion, stating that Sanders had failed to provide any specific explanation regarding how "justice so require[d]" the requested amendment.

Murray Agnew and Jeff Langley filed their motion for summary judgment on October 5, 2007. On November 1, 2007, Sanders filed a motion for an oral hearing on the motion for summary judgment, which the court denied. Sanders also issued a deposition subpoena for a Justice of the Peace, which Agnew and Langley sought to quash. The court granted the Defendants motion to quash because Sanders failed to issue the subpoena through the clerk.

On December 19, 2007, the magistrate judge issued a R & R that Agnew and Langley's motion for summary judgment be granted. Sanders sought additional time to filed objections, and the district court extended the time to file objections until January 16, 2008. Sanders did not file objections, however, until January 17, 2008.

The court issued its Memorandum Opinion and Order on March 20, 2008, adopting the R & R of the magistrate judge, and granting Agnew and Langley's motion for summary judgment. Judgment was entered on March 21, 2008, and Sanders timely appealed.

II. Discussion

A.  Motion to Dismiss

We review dismissal of a complaint for failure to state a claim de novo. Lindquist v. City of Pasadena, Tex., 525 F.3d 383, 386 (5th Cir. 2008) (citation omitted).  We accept all well-pleaded facts as true, "viewing them in the light most favorable to the plaintiff. Id. (citation omitted).  The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citation and footnote omitted).

Sanders challenges the grant of the motion to dismiss as to Limestone County and Dennis Wilson.  Even under the liberal construction afforded pro se litigants, Sanders fails to state a claim against Limestone County and Wilson. First, municipalities may not be held liable under a theory of respondeat superior, and Sanders failed to allege any policy of Limestone County that was the moving force behind any of the alleged constitutional violations.  Therefore, Limestone County cannot be held liable.  See Board of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997).

Sanders also sought to hold Wilson liable based on acts of his subordinates.  Sanders does not allege that Wilson was personally involved with the alleged acts, and therefore, the district court properly granted the motion to dismiss as to Wilson based on qualified immunity.  See Estep v. Dallas County, Tex., 310 F.3d 353, 361 (5th Cir. 2002) (citing Watson v. Interstate Fire & Cas. Co., 611 F.2d 120 (5th Cir. 1980), for the proposition that "a sheriff without any personal involvement was properly dismissed from a § 1983 suit").  We hold that the district court properly dismissed Sanders's claims against Limestone County and Dennis Wilson.

B.  Motion for Scheduling Order and Motion for Oral Hearing

We afford great deference to a district court's ruling on scheduling matters, reviewing only for abuse of discretion. See Hodges v. United States, 597 F.2d 1014, 1018 (5th Cir. 1979). Sanders argues that the magistrate judge abused his discretion by failing to grant an unopposed petition for a scheduling order and waiting more than three months to issue a ruling on the motion for scheduling order. He also contends that the district court abused its discretion by denying his motion for an oral hearing on a summary judgment motion and failing to rule on the motion within a reasonable time.

The Local Rules of the Western District of Texas expressly provide that "the allowance of an oral hearing shall be within the sole discretion of the judge to whom the motion is assigned." W.D. Tex. Local Rule CV-7(g). The district court did not abuse its discretion in denying Sanders's motion for an oral hearing.

Regarding the motion for a scheduling order, the Local Rules state that "the parties shall submit a proposed scheduling order" to the court. Local Rule CV-16(c). Sanders does not assert that he submitted the required proposal, and it appears from the record that the parties did not do so. Sanders failed to comply with the Rules of the court, and thus, we find no abuse of discretion by failing to enter a scheduling order.

Even assuming the parties submitted a proposed scheduling order, we still find no abuse of discretion. Sanders filed this suit on July 6, 2006. Sanders did not return the executed summons until more than two months later, in late September and early October. Within days, the Defendants filed a joint motion to dismiss on October 10, 2006. In February 2007, the court directed the parties to brief the issue of qualified immunity. Sanders did not seek a motion for a scheduling order until April 9, 2007, after the parties had submitted briefing on qualified immunity. Further, on May 2, 2007, Sanders sought a protective order to stay all depositions in the action, which the court granted on the same date

it entered its R & R for dismissal of Sanders's action.  In denying the motion for scheduling order, the magistrate judge stated that "[b]ecause a report and recommendation has been entered, this case has been returned to the docket of the district judge.  Thus, the district judge, if necessary, will revisit this issue and enter such an order in accordance with the strictures of his docket."

Sanders even acknowledged in his motion for a scheduling order that "it would be proper to await the court's ruling on the Defendants' motion to dismiss before filling [sic] any proposed scheduling order or attempting any discovery." Where Sanders sought a stay seeking protection from discovery and "felt it would be proper to await the court's ruling on the Defendants' motion to dismiss," we find that the magistrate judge did not abuse his discretion in not issuing a scheduling order.

C.  Motion to Amend Pleading

After the magistrate judge entered its R & R recommending dismissal of Sanders's claims, Sanders filed a motion for leave to amend his complaint pursuant to Federal Rule of Civil Procedure 15(a).  Sanders stated that he was seeking to amend the complaint to conform to evidence produced during discovery and "to protect the rights of the Defendants to a proper defense, as well as the Plaintiff's right to justice."

Rule 15(a) provides in part that the "court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2).  The district court denied Sanders's motion, stating that "Plaintiff has failed to provide any specific explanation regarding how or why 'justice so requires' the requested amendment." We agree. Even on appeal, Sanders fails to explain why justice so required that he be granted leave to amend.  See Jones v. Greninger, 188 F.3d 322, 327 (5th Cir. 1999).  The district court did not err in denying Sanders's motion to amend the complaint.

D. Motion to Quash Subpoena

Sanders served Justice of the Peace Hanna with a subpoena to appear for a deposition. Sanders states that he was seeking testimony relating to Judge Hanna's signing of the search warrant. It is imperative to "carefully scrutinize" the basis for compelling a judge to testify as to action taken in his judicial capacity. Gary W. v. State of La., Dep't of Health & Human Res., 861 F.2d 1366, 1369 (5th Cir. 1988) (referring to the longstanding principle as the mental processes rule). After careful review, we find no abuse of discretion in quashing the subpoena.

E. Motion to Strike Defendants' Motion for Summary Judgment

Sanders contends that the district court abused its discretion when it denied his motion to strike the Defendants' motion for summary judgment, as Sanders was seeking to obtain Judge Hanna's testimony. Generally, summary judgment may be granted only after an "adequate time for discovery." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). We review the denial of Sanders's motion to strike for an abuse of discretion. See Paul Kadair, Inc. v. Sony Corp. of Am., 694 F.2d 1017, 1029 (5th Cir. 1983). A plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is futile. See id. at 1029-30.

Because the court did not abuse its discretion in quashing the subpoena for Judge Hanna's testimony, the court did not abuse its discretion in denying a motion to strike a summary judgment motion based on Sanders's attempts to obtain Judge Hanna's testimony.

F. Motion for Summary Judgment

Sanders assigns error to the district court's grant of summary judgment in favor of Defendants, but Sanders's "objections" do not specify the specific claim(s) to which the objections relate. We have liberally construed Sanders's objections to apply to each relevant claim.

We review a district court's grant of summary judgment de novo. LeMaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 386 (5th Cir. 2007). Summary judgment is appropriate when "the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists if the summary judgment evidence is such that a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All the facts and evidence must be taken in the light most favorable to the non-movant. LeMaire, 480 F.3d at 387.

Most of Sanders's objections relate to facts that occurred prior to the issuance of the search warrant.[2] Sanders's objection to "Statement 1"[3] pertains to when the reportedly stolen vehicle was taken to Sanders's property; "Statement 2" goes to the omission of a fact that an officer had already spoken with Sanders's wife; and "Statement 3," "Statement 4," and "Statement 5" relate to the phone call from Elmore to an officer. These objections demonstrate no reversible error. An officer executing a warrant is entitled to dismissal of claims brought against him "if the warrant is regular on its face and the officer does not act in bad faith or with notice of an infirmity of the warrant." Kugle v. Shields,

---

[2] Sanders also seems to base his assignment of error as to the summary judgment ruling on the court's grant of the motion to quash the subpoena for Judge Hanna's testimony. To the extent Sanders relies on the discovery ruling quashing the subpoena for Judge Hanna's testimony, we find no reversible error on that basis for the reasons discussed above.

[3] Sanders assigns error to specific statements of the court, and we likewise will use Sanders's designation for reference purposes.

62 F.3d 395 (5th Cir. 1995) (unpublished); Duckett v. City of Cedar Park, Tex., 950 F.2d 272, 280 (5th Cir. 1992).  There is no summary judgment evidence of bad faith, a material omission by the officers in obtaining the search warrant, or any infirmity in the warrant, so the officers were entitled to summary judgment based on the execution of the search warrant.

"Statement 6" and "Statement 7" relate to the arrest warrant.  Sanders focuses on the purported lack of probable cause to arrest him for the stolen vehicle; Sanders does not dispute that the officers had probable cause to arrest him for insurance fraud.  This assignment of error is also without merit.  See United States v. Saunders, 476 F.2d 5, 7 (5th Cir. 1973) ("When an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest.").

Sanders asserts other general objections, including absence of an impartial trial judge and repeated objections regarding execution of the search warrant and arrest.  Having considered the parties' briefs and the record, we conclude that Sanders's general objections are without merit.

III.  Conclusion

Because we find no reversible error, we AFFIRM.