# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 18, 2026

Lyle W. Cayce
Clerk

No. 25-50025

———————

Rafael Marfil; Verge Productions, L.L.C.; Enrico Marfil; Naomi Marfil; Korey A. Rholack; Daniel Olveda; Douglas Wayne Mathes,

*Plaintiffs—Appellants*,

*versus*

City of New Braunfels, Texas,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:20-CV-248

———————————————————————

Before Higginson, Willett, and Engelhardt, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:

Plaintiffs-Appellants, owners of properties located in the City of New Braunfels, Texas, appeal the district court's entry of summary judgment in favor of the City. Appellants claim that the City's zoning ordinance (the "Ordinance") regulating short-term property rentals in certain residential districts—enacted years before any Appellant purchased their property—violates the Due Process and Equal Protection Clauses of the United States and Texas Constitutions. Their due process claim rests on the premise that

No. 25-50025

Texas law recognizes a protected property interest in "the right to lease one's home on a short-term basis." Texas courts, however, have held that it does not. We further hold that the Ordinance survives rational-basis review under the Equal Protection Clause. The district court's judgment is accordingly AFFIRMED.

I.

This appeal turns on the City of New Braunfels's ordinances surrounding short-term rentals. In 2006, the City enacted a comprehensive zoning ordinance. New Braunfels, Tex., Ordinances ch. 144, § 1.1 *et seq.* Nov. 8, 2006). Section 5.16 of the Ordinance was entitled "Short term rental or occupancy in one and two unit dwellings," and it outlined certain restrictions on the occupancy of such dwellings "for less than 30 consecutive days" outside of certain commercial districts absent a special use permit. It also prohibited short-term rentals in certain districts zoned "Residential." Section 5.16 was amended in 2011 to expand the regulation of short-term rentals, but the designation of the "Residential" districts in the City at issue here, where short-term rentals are prohibited, did not change.

Each Appellant purchased their property after the City had enacted the Ordinance's prohibition on short-term rentals in Residential districts. Appellant Doug Mathes purchased his property in 2011. The remaining Appellants purchased their properties in 2017 and 2018. Appellants' properties are all located in zoning districts designated "Residential," where short-term rentals are prohibited under both the 2006 and the 2011 versions of the Ordinance. The Ordinance contains provisions by which a property owner can apply for a zoning change to his property for the purpose of engaging in short-

2

No. 25-50025

term rentals. Appellants (other than Mathes) all applied for and were denied a zoning change.[1]

In response, Appellants sued the City for alleged violations of the Unites States and Texas Constitutions. The district court dismissed all claims in 2020 pursuant to Federal Rule of Civil Procedure 12(b)(6). A panel of our court vacated and remanded in a one-paragraph opinion, noting that, "based on the complaint's well-pled allegations, plaintiffs are entitled to engage in discovery in an attempt to surmount the currently high bar for challenging local zoning ordinances under the Constitution." *Marfil v. City of New Braunfels*, 70 F.4th 893, 893 (5th Cir. 2023) (Mem). We did not address the merits of the Appellants' claims.

Following discovery, the parties filed cross-motions for summary judgment. The district court ultimately entered judgment in favor of the City on all claims. This appeal followed.

II.

"Because this case is before the court on cross motions for summary judgment, we review the district court's rulings de novo and construe all

---

[1] After purchasing neighboring properties in 2018, Enrico and Rafael Marfil engaged in illegal short-term rental of their properties, leading to at least one complaint from a neighbor. The City thereafter opened an investigation into both properties, culminating in the issuance of Notices of Violation by the City. Thereafter, in 2019, Rafael Marfil, Verge Productions, LLC, Enrico, and Naomi Marfil applied to the City for a zoning change of their property to allow for short-term rentals. As part of the zoning change process, neighbors were invited to comment; the City received several comments regarding the Marfil applications; most were against the proposed change, although two were in favor. The City's Planning Commission recommended that the City Council deny the requests, which it did. The City Council's decision was not appealed. Appellants' complaint does not challenge the City's procedure for applying for zoning changes or assert that there was error in the proceedings conducted with respect to their requests for a zoning change.

evidence and inferences in favor of the non-moving parties." *Evanston Ins. Co. v. Mid-Continent Cas. Co.*, 909 F.3d 143, 146 (5th Cir. 2018) (citation omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## III.

We separately analyze Appellants' due process and equal protection claim.

## A.

We first address Appellants claim of a due process violation under the United States Constitution and a due course violation under the Texas Constitution. Appellants' brief states that their "claims involve facial and as-applied challenges" to the Ordinance. But Appellants do not brief the facial challenge, nor did they raise it in the district court. Accordingly, we only address the as-applied challenge. *Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 398 (5th Cir. 2021) ("We do not ordinarily consider issues that are forfeited because they are raised for the first time on appeal.").

The Fourteenth Amendment to the United States Constitution states that no person shall be "depriv[ed] . . . of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Article I, Section 19 of the Texas Constitution provides: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." There is no "meaningful distinction" between "due process" in the United States Constitution and "due course" in the Texas Constitution. *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995).

No. 25-50025

"To prevail under the Due Process Clause, Appellants must first 'allege a deprivation of a constitutionally protected right.'" *Hignell-Stark v. City of New Orleans*, 154 F.4th 345, 353 (5th Cir. 2025) (quoting *Mikeska v. City of Galveston*, 451 F.3d 376, 379 (5th Cir. 2006)). "The Constitution does not create property interests; 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Id.* (quoting *Schaper v. City of Huntsville*, 813 F.2d 709, 713 (5th Cir. 1987)). "Accordingly, we usually treat, as dispositive, the existence—or absence—of a property interest under state law." *Id.* at 322.

That issue is dispositive here. Appellants assert the existence of a property interest under Texas law. They argue that the "right to lease" is "an inherent liberty and property right" and that "Texas courts have repeatedly held that this 'right to lease' includes the right to lease one's home on a short-term basis." Appellants either overstate or misstate the holdings of the Texas courts.[2]

In certain cases involving retroactive ordinances and/or regulatory takings claims, Texas courts have found a vested or settled property interest allows continued engagement in short-term rentals of property where the property owner had already been engaged in such activity prior to the enactment of the ordinance. *See, e.g.*, *Zaatari v. City of Austin*, 615 S.W.3d 172, 188 (Tex. App.—Austin 2019, pet. denied) (finding ordinance unconstitutionally retroactive); *Village of Tiki Island v. Ronquille*, 463 S.W.3d 562, 582 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (regulatory taking claim).

---

[2] Appellants are represented by counsel who have been actively involved in a multitude of cases throughout Texas challenging municipal short-term rental regulations, wherein they have repeatedly—and unsuccessfully—asked the Texas state courts to declare such a protected property interest exists under Texas law.

No. 25-50025

But, contrary to Appellants' assertions, the Texas courts have not found a vested property interest in "the right to lease one's home on a short-term basis."[3] Appellants cite *City of Grapevine v. Muns*, 651 S.W.3d 317 (Tex. App.—Fort Worth 2021, pet. denied), in support of their cause, which extensively discussed the nature of the right claimed by Appellants.[4]

In *Grapevine*, the property owners brought regulatory takings claims as well as asserting the ordinance was unconstitutionally retroactive and violated the due course clause. *Id.* at 325. In its discussion of the due course of law provision, the court held, "although the Homeowners have a vested right in their properties, they do not have a vested right under the Zoning Ordinance to use them as [short-term rental]s." *Id.* at 346 (footnote omitted). The *Grapevine* court further clarified its limited holding with respect to any purported vested right to lease on a short-term basis:

> In its motion for en banc reconsideration, the City asks us to reconsider our holding that Texas property owners have a vested right to lease their homes on a short-term basis. *This*

---

[3] In *Zaatari*, which Appellants rely on heavily, the court distinguished between "vested" rights and "settled" interests. *Zaatari*, 615 S.W.3d at 190. That court "conclude[d] that owners of type-2 rental properties have a settled interest in their right to lease their property short term" based on the record before it, which included a finding that the city had admitted that short-term rentals were an "established practice" in Austin, and a showing that some of the plaintiffs had engaged in short-term rentals before the passage of the ordinance. *Id.* at 191. This is not the same as a protected or vested property interest for purposes of due process or due course of law analysis. *See, e.g., City of Dickinson v. Crystal Cruise Invs., LLC*, No. 01-24-00684-CV, 2026 WL 530391, at *5 (Tex. App.—Houston [1st Dist.] Feb. 26, 2026, no pet.) (discussing the nature of vested property rights in connection with Texas due course claim).

[4] In *Grapevine*, property owners who were already engaged in short-term renting challenged an ordinance banning short-term rentals. 651 S.W.3d at 325. The city filed a plea to the jurisdiction asserting that the trial court lacked subject-matter jurisdiction. The appellate court's holding affirmed that the property owners had pleaded viable claims such that they were entitled to proceed. *Id.* at 328–29.

6

No. 25-50025

*overstates our holding*. To be clear, we hold that a property owner has a vested right to lease his property. Whether the durational restrictions imposed by the [Short-Term Rental] Ordinance violate the Homeowners' due-course-of-law rights regarding their right to lease goes to the case's merits, an altogether improper inquiry at this stage of the case.

*Id.* at 347 (emphasis added).[5]

Most recently, in *Modern Builders, LLC v. City of Fort Worth*, No. 02-25-00275-CV, 2026 WL 1501055 (Tex. App.—Fort Worth May 28, 2026, no pet. h.), the Second Court of Appeals, which had decided *Grapevine*, returned to the issue, addressing similar short-term rental regulations in Fort Worth, where property owners in districts where short-term rentals had never been allowed raised constitutional challenges to the city's zoning scheme. *Id.* at *1. Determinatively, the court found that 1) there was no vested right to lease the properties short-term; and 2) the city's ordinances were rationally related to legitimate government interests in preserving the character of single-family residential neighborhoods. *Id.* at *1.

Indeed, the court specifically noted its prior discussion and holding in *Grapevine*: "Answering the question left open in *Grapevine*, then, we hold that the Owners do not have a vested common-law right to use their properties as short-term rentals." *Id.* at *7 (footnote omitted). The court went on to explain the significance of properly defining the property interest

---

[5] The Supreme Court of Texas denied review, *City of Grapevine v. Muns*, 671 S.W.3d 675, 676 (Tex. 2023), with two Justices concurring to express that the case before them was "a less-than-ideal vehicle for resolving the constitutional issues" and that it was "premature for [the Supreme Court of Texas] to render a final decision that binds all our cities, the legislature, and the lower courts," *id.* at 677 (YOUNG, J., joined by BLACKLOCK, J., concurring in the denial of the petition for review).

No. 25-50025

at stake, which is the exact property interest asserted by Appellants in their complaint:

> In defining the interest at stake here, and narrowing it as we should, we thus distinguish between a right to lease and a right to lease for less than 30 days; the former is a core incident of property ownership, the latter a specific use carrying no common-law categorical vested-right protection.

*Id.* at *7 n.20.

Similarly, in *City of Dickinson v. Crystal Cruise Investments, LLC*, 2026 WL 530391, at *5, the First Court of Appeals addressed a zoning ordinance limiting short-term rentals and reversed the trial court's order enjoining the enforcement of the ordinance. In its analysis of the protected interest asserted, the court discussed the nature of the rights protected under the due course of law protections afforded by the Texas Constitution:

> A constitutionally protected right must be a vested right, which is something more than a mere expectancy based upon an anticipated continuance of an existing law. A right is vested when it has some definitive, rather than merely potential existence. Under this Court's precedent, the right to lease is not absolute and does not establish a vested property interest. Further, property owners do not acquire a constitutionally protected vested right in property uses once commenced or in zoning classifications once made. Dickinson's vacation rental ordinance was in place for six years before Crystal Cruise bought the property, so under this Court's precedent, Crystal Cruise cannot show that it has any vested right to use the property as a vacation rental as a matter of law.

*Id.* at *5–6 (citation modified).

Thus, the two Texas appellate courts to squarely address the question of whether the protected property right claimed here by Appellants exists under Texas law have held that it does not. And that matters. "In instances[,

like this one,] where the State's highest court has not spoken on the direct question, federal courts are required to make an *Erie* guess and determine, in their best judgment how the State's highest court would resolve the issue if presented with the same case." *McGlothin v. State Farm Mut. Ins. Co.*, 925 F.3d 741, 745–46 (5th Cir. 2019) (citation modified). "In making our *Erie* guess, we look first to those Texas Supreme Court cases that, while not deciding the issue, provide guidance as to how the Texas Supreme Court would decide the question before us." *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564 (5th Cir. 2010). "Though the decisions and dicta of the Texas Supreme Court weigh more heavily in our *Erie* analysis, we also consider those decisions of Texas appellate courts in determining how the Texas Supreme Court would rule on this issue." *Id.* at 566. "When making an *Erie* guess, we do not adopt innovative theories of state law but aim simply to apply that law as it currently exists." *Weatherly v. Pershing, L.L.C.*, 945 F.3d 915, 920 (5th Cir. 2019) (citation modified). "If the law of the state is to be changed, it is up to the supreme court of the state and not this court to change the substantive law of that state." *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 765 n.5 (5th Cir. 2018) (citation modified) (quoting *Jackson v. Johns–Manville Sales Corp.*, 781 F.2d 394, 397 (5th Cir. 1986) (en banc), *abrogated on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 242 (1991)).

The Supreme Court of Texas has not yet considered whether a protected property interest in "the right to lease one's home on a short-term basis" exists. And, as noted, the two Texas appellate court decisions to squarely examine the issue have held that there is no such protected right. Unless and until such time as the Supreme Court of Texas rules differently, we must "apply that law as it currently exists." *Weatherly*, 945 F.3d at 920 (internal quotation marks and citation omitted). "Because Appellants have not alleged a protected property interest under [Texas] law, their due-

process claims fail." *Hignell-Stark*, 154 F.4th at 354; *see also Tex. Dept. of State Health Servs. v. Crown Distrib., LLC*, 647 S.W.3d 648, 653 (Tex. 2022) (declining to reach rational basis or oppressiveness arguments because due course clause does not protect the asserted interest).

### B.

Appellants also assert claims under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article 1, Section 3 of the Texas Constitution.[6] Appellants' complaint asserts the Ordinance makes a distinction between rentals of twenty-nine days (banned) and rentals of thirty days (permitted) in the designated Residential Districts. Appellants posit that "both short and long-term rentals are residential uses," that there is "no significant difference between the two that would fall within the scope of the police power," that "short term rentals do not cause substantially more nuisances than long-term rentals," and that this is "particularly true as applied to Plaintiffs' properties which are in high traffic areas surrounded by other short-term rentals." In other words, Appellants argue that the Ordinance's line drawing either is arbitrary or does not meaningfully advance a legitimate government interest, failing rational-basis review.

The Fourteenth Amendment of the United States Constitution states that equal protection of the laws shall not be denied to any United States citizen. U.S. CONST. amend XIV, § 1. Likewise, Article 1, Section 3 of the Texas Constitution guarantees that "[a]ll free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public

---

[6] We reject Appellants' argument that the district court failed to address the Equal Protection claims in its order. The district court expressly found that "the ordinance limiting short term rentals seems to meet rational basis by preserving residential character." That ruling speaks directly to the Equal Protection claim.

services." "Because 'the federal analytical approach applies to equal protection challenges under the Texas Constitution,' we do not address separately the [Appellants'] claim under the Texas Constitution." *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir. 2012) (first quoting *Bell v. Low Income Women of Tex.*, 95 S.W.3d 253, 266 (Tex. 2002); and then citing *Lindquist v. City of Pasadena*, 525 F.3d 383, 386 n.1 (5th Cir. 2008)).

"The equal protection clause essentially requires that all persons similarly situated be treated alike." *Mahone v. Addicks Util. Dist.*, 836 F.2d 921, 932 (5th Cir. 1988) (first citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985); and then citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "'Similarly situated' means 'in all relevant respects alike.'" *Golden Glow Tanning Salon, Inc. v. City of Columbus*, 52 F.4th 974, 978 (5th Cir. 2022) (quoting *Tex. Ent. Ass'n, v. Hegar*, 10 F.4th 495, 513 (5th Cir. 2021)).

Assuming without deciding that the Ordinance discriminates against similarly situated property owners, Appellants have not overcome rational-basis review. The parties do not dispute that rational-basis review applies because Appellants have not alleged that they belong to a protected class that would trigger strict scrutiny of their equal protection claims. *Glass v. Paxton*, 900 F.3d 233, 244 (5th Cir. 2018). The burden is on Appellants to show the district court erred in granting the City's motion for summary judgment, and rational basis is a high bar to overcome:

> Whether embodied in the Fourteenth Amendment or inferred from the Fifth, equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

*FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993); *see id.* at 320.

Texas's substantive due process jurisprudence illustrates the point. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 939 (Tex. 1998) ("In analyzing [the equal protection] claim, we apply the same standards as to the[] substantive due process analysis."). Under Texas law, a "generally applicable zoning ordinance will survive a substantive due process challenge if it is designed to accomplish an objective within the government's police power and if a rational relationship exists between the ordinance and its purpose." *Id.* at 938 (collecting cases). "This deferential inquiry does not focus on the ultimate effectiveness of the ordinance, but on whether the enacting body could have rationally believed *at the time of enactment* that the ordinance would promote its objective." *Id.* (emphasis added) (citing *Williams v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 487–88 (1955)). "If it is at least fairly debatable that the decision was rationally related to legitimate government interests, the decision must be upheld." *Id.* (citing *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981)). "The ordinance will violate substantive due process only if it is clearly arbitrary and unreasonable." *Id.* (citation omitted) (emphasis omitted).

"If the municipal council deemed any of the reasons which have been suggested, or any other substantial reason, a sufficient reason for adopting the ordinance in question, it is not the province of the courts to take issue with the council." *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 393

12

(1926) (quotation omitted). "We have nothing to do with the question of the wisdom or good policy of municipal ordinances. If they are not satisfying to a majority of the citizens, their recourse is to the ballot—not the courts." *Id.* (quotation omitted). As we held in *Shelton v. City of College Station*:

> The difference between an inquiry into whether there was any possible rational basis for legislation and an inquiry into the actual basis of legislation is significant. A court's assumption of the power to decide between competing legislative proposals or to require the state to prove the validity of its choice is quickly the right to change the legislative process itself.

780 F.2d 475, 481 (5th Cir. 1986) (citing Gerald Gunther, *Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection*, 86 Harv. L. Rev. 1 (1972)).

We explained, "[f]ar from treating the question of rationality as a historical fact necessarily subject to evidentiary procedures and findings of a trial court," courts should look "for a conceivable rational basis for the implicit judgment of the governing body that its legislative purpose was served by its decision." *Id.* at 484. Even where the government is asked "to point to a rational basis employed in reaching its decision, as opposed to a basis later hypothesized by others, nothing requires proof of *the*, as distinguished from *a*, basis of decision." *Id.* (emphasis in original).

These restraints on judicial review have added force "where the legislature must necessarily engage in a process of line-drawing." *U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980). Defining the class of persons subject to a regulatory requirement "'inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line,' and the fact [that] the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration." *Id.* (quoting *Matthews v. Diaz*, 426 U.S. 67, 83–84 (1976)).

No. 25-50025

Applying these precepts here, we agree with the district court's finding that the City's goal of "preserving residential character" of the neighborhoods at issue satisfied the rational-basis requirement. The City enacted the 2006 Ordinance to "promot[e] health, safety, and the general welfare of the public," and regarding the zoning districts, it noted that, "each district has been established with reasonable consideration for the character of the district and its peculiar suitability for the particular uses, and with the view of conserving the value of buildings and encouraging the most appropriate use of land throughout the community." The City enacted the 2011 amendment, which further regulated short-term rentals because, "the City Council of the City of New Braunfels, Texas, finds it necessary to amend the regulatory standards of short term rentals and occupancy to protect residential neighborhoods in New Braunfels."

We have previously held that "the protection of residential integrity is a legitimate objective of a zoning regulation." *Jackson Ct. Condos., Inc. v. City of New Orleans*, 874 F.2d 1070, 1078 (5th Cir. 1989) (citation omitted)(addressing a city-wide moratorium on time-share arrangements). We have also held that an ordinance "explicitly intended to 'enhance property values, promote economic development, and provide identity and a sense of community'" concerned "purposes [that] easily serve as the rational basis for a municipal zoning ordinance." *Yur-Mar, L.L.C. v. Jefferson Par. Council*, 451 F. App'x 397, 401 (5th Cir. 2011). And most recently, we found that preventing nuisances, promoting affordable housing, and protecting neighborhoods' residential character were legitimate local purposes. *Hignell-Stark*, 46 F.4th at 328.[7]

_____

[7] The Second Court of Appeals has similarly found objectives such as safeguarding the life, health, safety, welfare, and property of STR occupants, neighborhoods, and the general public; and minimizing the adverse impacts resulting from increased transient

The distinction at issue in the Ordinance—between twenty-nine and thirty days—represents reasonable line drawing by the City. Similarly, the prohibition of short-term rentals in certain neighborhoods zoned as residential also represents reasonable line drawing by the City. In enacting the Ordinance and the amendment, the City determined the necessity of regulating short-term rentals. "This necessity renders the precise coordinates of the resulting legislative judgment virtually unreviewable, since the legislature must be allowed leeway to approach a perceived problem incrementally." *Beach Commc'ns, Inc.*, 508 U.S. at 316.

Similarly, the City had to draw the line between zoning districts somewhere. A review of the zoning maps offered into evidence by the City shows one line drawn was down South Union Avenue. One side of this street is zoned commercial, and one side is zoned residential. Of course, the City could have drawn the line somewhere else, but it did not. It is true that some of Plaintiffs' properties are close to, or even abut, these lines, but as the

---

rental uses in neighborhoods that were planned, approved, and constructed for single-family residences to be permissible. *Draper v. City of Arlington*, 629 S.W.3d 777, 786 (Tex. App.—Fort Worth, 2021, pet.denied). It further noted:

> It stands to reason that the residential character of a neighborhood is threatened when a significant number of homes . . . are occupied not by permanent residents but by a stream of tenants staying a weekend, a week, or even 29 days. Whether or not transient rentals have the other "unmitigatable [sic], adverse impacts" cited by the Council, such rentals undoubtedly affect the essential character of a neighborhood and the stability of a community. Short-term tenants have little interest in public agencies or in the welfare of the citizenry. They do not participate in local government, coach little league, or join the hospital guild. They do not lead a Scout troop, volunteer at the library, or keep an eye on an elderly neighbor. Literally, they are here today and gone tomorrow—without engaging in the sort of activities that weld and strengthen a community.

*Id.* at 792 n.21 (quoting *Ewing v. City of Carmel-By-The-Sea*, 286 Cal. Rptr. 382, 388 (Cal. Ct. App 1991)).

No. 25-50025

Supreme Court noted in *United States Railroad Retirement Board v. Fritz*, it is inevitable that "some persons who have an almost equally strong claim to favored treatment [will] be placed on different sides of the line." 449 U.S. at 179 (citation omitted). The cases are clear that absent some showing of an improper motive or purpose, the courts are not meant to second guess the line drawing by the City. And Plaintiffs have not presented evidence that shows any improper purpose. Rather, they argue the City should have either drawn the line differently or not drawn a line at all.

Because "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data,"[8] *Beach Commc'ns, Inc.*, 508 U.S. at 315, we find no violation of the Equal Protection Clauses of either the United States or the Texas Constitutions.

## IV.

Finding no reversible error, we AFFIRM the judgment of the district court.

---

[8] For this reason too, it is beside the point that, according to Appellants, "short-term rentals do not produce meaningfully more disturbances than other residential uses." What's more, the City's Ordinance was enacted after a deliberative process, which revealed complaints from the citizenry about short-term rentals in residential neighborhoods. The Development Code Steering Committee began working on the Ordinance in 2001 and made a recommendation to the Planning Commission in March 2006, a five-year process. Similarly, the record shows that when enacting the 2011 amendment, the City's Planning Commission held a public hearing and workshops, and then the City Council also held public hearings on the proposed amendment. We are satisfied that the City's "legislative choice" here was at least "based on rational speculation." *Beach Commc'ns, Inc.*, 508 U.S. at 315.